## Smith, Appellant, *v.* Peacock Construction Company.

Argued April 17, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Robert L. Ceisler,* with him *Patrono, Ceisler & Edwards,* for appellant.

*William C. Porter,* for appellee.

OPINION BY MONTGOMERY, J., June 13, 1969:

Appellant initiated this action by issuing a writ of foreign attachment based on a claim in assumpsit against appellee, Peacock Construction Company, a foreign business corporation, incorporated under the laws of the State of Georgia. Appellant originally claimed $37,709.60 with interest, but by an amendment to his complaint this was raised to $44,421.09. Appellee denied the claim and asserted a counterclaim of approximately $15,000. The case was tried before Hon. CHARLES G. SWEET, President Judge, without a jury, and a decision was rendered in appellant's favor for $1,846.81 with interest. Appellant's motion for a new trial having been dismissed after argument before a court en banc, and judgment having been entered on the decision, he appealed.

Since the lower court made no specific findings of fact[1] or conclusions of law but merely rendered a decision, it now becomes our responsibility on this appeal to review the entire record and attempt to make our own determination of the facts and draw our own conclusions of law based thereon. *Yoo Hoo Bottling Company of Pennsylvania, Inc. v. Leibowitz*, 432 Pa. 117, 247 A. 2d 469 (1968); *Idell v. Falcone*, 427 Pa. 472, 235 A. 2d 394 (1967); *Ballinger v. Howell Manufacturing Company*, 407 Pa. 319, 180 A. 2d 555 (1962).

Our careful review of this record indicates clarity in the basic facts. Plaintiff, with engineering experience and business contacts, entered into an oral contract with the defendant corporation, a construction company, acting through Cassius Peacock, its president, general manager, and 99 per cent stockholder, in June, 1962, to procure construction contracts for the defendant and to supervise the work. The terms of this oral contract are not clear. However, later, in July, 1962, plaintiff and Cassius Peacock each signed an undated paper bearing the heading, "FORT MYERS-NAPLES-PUNTA GORDA READY MIXED CONCRETE, INC.", on which Mr. Peacock had written the following:

"1. Salary $800.00/month is general company overhead

"2. Smith's expenses are job cost

"3. Company overhead charged to jobs is agreed at 4½% of job cost

"4. Job selling price, less job cost plus 4½% overhead on job cost, is job profit.

"5. Smith gets 30% of job profit."

---

[1] In the absence of a request for findings of fact and conclusions of law, the trial judge was not bound to file them. See Act of April 22, 1874, P. L. 109, §2, as amended, 12 P.S. §689. However, an opinion by the court en banc, had one been filed, would have been helpful to us.

Neither Mr. Peacock nor either of the parties had any interest in the firm whose name appeared as the heading on the paper. It was a sheet from a scratch pad Mr. Peacock had on his desk in Fort Myers, Florida, at the time the paper was written.

Following the oral agreement plaintiff extended efforts to secure building contracts for the defendant and secured a $500,000 contract with the Continental Can Company for the construction of a building in Zanesville, Ohio, as a warehouse for its Hazel Atlas branch, and another contract with the same company for another building in Washington, Pennsylvania, for a contract price of $70,000. Both buildings were constructed by defendant with plaintiff supervising the construction; and defendant received payment of the price of both contracts. During the period that plaintiff was working in defendant's interests he was held out as a vice president, given various credit cards enabling him to secure credit against defendant's accounts; he expended money on behalf of defendant for which he was reimbursed; he was paid salary in the sum of $800 per month until August, 1963; and he was given a check for $10,000 on a voucher marked, "Amount due as of 12/31/62—Hazel Atlas Warehouse Zanesville, Ohio." Plaintiff was discharged by defendant in September, 1963.

The basic issue in this case relates to the meaning of the writing set forth above. Plaintiff contends it is a memorandum evidencing the oral agreement of June, 1962. Defendant contends it is related to another venture engaged in by the parties to construct buildings on land owned by other parties on a leaseback arrangement in which they would secure 100 per cent financing without contributing any of their own money. After such a deal was completed, they would then divide the profit. The lower court accepted this theory and awarded plaintiff only his salary of $800

for the month of September, 1963, and unreimbursed expenditures made by plaintiff on behalf of defendant to the time of his discharge. Our appraisal of the testimony leads us to a contrary conclusion.

Under defendant's theory no money was due plaintiff as of 12/31/62 when he received $10,000 from defendant. Mr. Peacock attempts to explain this by saying that this was merely a bonus to retain plaintiff as an employe. However, the voucher shows it was for money due on the Hazel Atlas job, which was near completion at that time. Furthermore, it was charged to that job for tax purposes. It is, therefore, in our opinion, incredible to believe that it was a voluntary gift as a bonus. On the contrary, it supports plaintiff's theory of his claim.

The overall atmosphere of the case also impresses us as supporting plaintiff's contention. It seems to us that it would be improbable for these parties to have engaged in the second venture described by Mr. Peacock so soon after their first agreement and before fruition of their efforts under it.

We shall not attempt to act as a trial court and resolve the complicated financial disagreement between these parties on the claim and counterclaim except to hold that the weight of the testimony favors plaintiff, rendering the judgment in his favor grossly inadequate. This requires a new trial rather than a remand for the purpose of having the lower court make findings of facts and conclusions of law, which we would generally do in such cases. However, due to the conflicting testimony of the parties and the confusion created by the excessive amount of unnecessary testimony relating to plaintiff's educational background, which was admitted merely to reflect on his credibility, we shall order the new trial to be a general one, encompassing all issues, including the contested counterclaim assert-

ed by the defendant, which was not disposed of by the lower court.

Judgment reversed and a new trial awarded.

WRIGHT, P. J., would affirm the judgment below.