# First Trinity Evangelical Lutheran Church Appeal.

Argued April 15, 1970.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Charles C. Arensburg,* with him *William H. Markus, John P. Papuga,* and *Patterson, Crawford, Arensberg & Dunn,* for appellant.

No appearance was entered nor argument made for objectors, appellees.

OPINION BY MONTGOMERY, J., June 11, 1970:

This is the second appeal to reach us in this case. The first resulted in a reversal of the lower court's original order dismissing appellant's petition, with a procedendo, on our opinion reported in 214 Pa. Superior Ct. 185, 251 A. 2d 685 (1969).   Since that time a new hearing has been held at which the testimony of

the original hearing was made a part of the record by stipulation of counsel. Following that hearing, the lower court again dismissed the petition. However, in doing so, it failed to make findings of fact, conclusions of law or file a new opinion. Accordingly, since there are no factual determinations by the hearing judge which are binding on us with the weight of a jury verdict, we must review the entire record and make our own determination of the facts and apply the appropriate legal principles. *Ballinger v. Howell Manufacturing Company*, 407 Pa. 319, 180 A. 2d 555 (1962); *Smith v. Peacock Construction Company*, 214 Pa. Superior Ct. 324, 257 A. 2d 592 (1969).

The history of Oakland Cemetery is set forth in our previous opinion, in which much of the evidence taken at the first hearing was recited and the applicable law was discussed. Therefore, we shall affirm what we said in that opinion rather than repeat it herein. Part of the additional testimony taken at the rehearing relates to the present condition of the cemetery and is merely an elaboration of what was previously described. The balance relates to the plans for actual removal of the bodies, the desirability and adequacy of the suggested new burial site, the right of owners of lots in the present cemetery to determine where the remains of their relatives should be reinterred and what are the proper expenditures or allowances for such removals and the unused lots.

Without difficulty, we find that the conditions prevailing at the present cemetery dictate its abandonment as a suitable burial site because of the change in its surroundings, i.e., the closing of streets, which render it angular and the erection of buildings, etc., immediately adjoining it, which terminates its usefulness as a place where proper reverence and respect for the dead may be shown. The statutory authorities for a declaration of abandonment based on these findings are

the Acts of August 11, 1959, P. L. 676, §2, 9 P.S. §48.1, and May 19, 1923, P. L. 281, §1, 9 P.S. §51, which we discussed in our previous opinion. We now find that the requirements of these acts have been fully satisfied. Therefore, the removal of the remains of deceased persons now buried in Oakland Cemetery and a declaration of its abandonment after such removals have been accomplished are justified, and for that reason the denial of appellant's petition was improper.

It was competent for the Legislature to pass an act merely authorizing the removal of the remains from the burial ground. *Craig v. First Presbyterian Church of Pittsburgh,* 88 Pa. 42 (1878). However, it has seen fit to impose certain conditions which must be met before such removals may be made. We have found that those conditions have been met. As stated in *Craig v. First Presbyterian Church of Pittsburgh,* supra, at page 52, the case must be ". . . considered [on] the law of this case, not its sentiment. Mere sentiment, not based upon rights of persons or property, is not of value in a judicial proceeding." The rights of lot owners in burial grounds are for the burial of their dead therein until such time as the grounds are abandoned, when they must remove the remains of their loved ones at their own expense to burial grounds elsewhere. In *Kincaid's Appeal,* 66 Pa. 411, 421 (1870), Mr. Justice SHARSWOOD, later Chief Justice, said, "The lot-holder purchased a license—nothing more—irrevocable as long as the place continued a burying-ground—but giving no title to the soil. . . . But if in the course of time it should become necessary to vacate the ground as a burying-ground, all that he could claim, either in law or equity, would be that he should have due notice and the opportunity afforded to him of removing the bodies and monuments to some other place of his own selection, or that on his failing to do so such removal should be made by others." This language was repeated in

*Craig v. First Presbyterian Church of Pittsburgh,* supra, at page 51.

The other main issue is whether the proposed Oakland Memorial Gardens within Mt. Royal Memorial Park, located beyond the limits of the City of Pittsburgh, in Shaler Township, Allegheny County, which in part adjoins the City of Pittsburgh, satisfies the provisions of the statute, that the burial grounds in which bodies will be reinterred shall be suitable and properly regulated burial grounds in the vicinity.

The evidence clearly establishes the facts that the proposed tract in Mt. Royal is suitable and properly regulated. It corresponds in size with the present Oakland Cemetery. It is compact and well located within the grounds of Mt. Royal. It is to be established as a garden spot, with plantings of ornamental trees, shrubs, and flowers. It is to be identified with the Lutheran Cross, to indicate the denominational faith of petitioner's church. In reading this record we sense no serious disagreement with these statements.

Most of the objectors present at the hearing (none appeared at the argument of the appeal) complained about the great distance they will be compelled to travel to reach Mt. Royal and its inaccessibility. The inaccessibility objection is without merit. Mt. Royal is located on a main paved highway, Mt. Royal Boulevard, and near Route 8, another well established highway, which leads due north from Pittsburgh. The area is served on both highways by public transportation facilities, i.e., buses of the Port Authority of Allegheny County, which run into downtown Pittsburgh. Furthermore, by reason of its topography, the Oakland Cemetery is much more difficult to reach by both pedestrian and motorist than Mt. Royal.

Insofar as traveling a greater distance from their home to visit Mt. Royal than what they now travel to Oakland Cemetery, the objectors established no con-

sistent pattern. The distances may be greater for some and shorter for others. However, the difference is meaningless for most visitors, for they no longer live in close proximity to the present cemetery or to the church, which is about one mile from the cemetery. Many of them live great distances beyond the limits of the City of Pittsburgh. The direct distance between the two cemeteries was estimated to be approximately seven miles.

Furthermore, we have no difficulty in finding that Mt. Royal is in the vicinity of Oakland Cemetery. In fact, it would be difficult to find a suitable site of the required size anywhere within this section of the City of Pittsburgh due to its built-up condition by all types of users, and the density of the population.[1] The size of the area we are considering, the number of people living within the immediate vicinity of Oakland, and the other factors just mentioned compel the conclusion that Mt. Royal is within the general vicinity of Oakland, as close to it as it is possible to find a suitable place, as intended by the act.

Although our decision to order the removal of the remains of deceased persons buried in Oakland to Mt. Royal and the subsequent abandonment of Oakland is predicated on the application of the law to the facts as we find them, we shall nevertheless impose conditions on these removals which will be intended to recognize the sentiments of the living descendants of those persons buried in Oakland and to observe proper respect for the deceased and reverence for their memories.

The Act of May 19, 1923, supra, indicates the keen interest of the Legislature in these matters by provid-

---

[1] Allegheny Cemetery and Homewood Cemetery, although within the City of Pittsburgh, and lesser distance from the present cemetery than Mt. Royal, were considered but found not suitable since a separate six-acre tract within them could not be secured.

ing, "That all bodies when so removed shall be placed in separate caskets and graves, and the headstones, monuments or other markers placed over the remains of said bodies shall be taken, by the persons authorized to make such removal, and placed as near as can be in the same relative position as before removal." It appears that petitioner is ready and willing to meet those conditions as fully as it is reasonably possible to do so.

Therefore, the order of the lower court will be reversed and it shall be ordered that:

1. Petitioner, First Trinity Evangelical Lutheran Church in the City of Pittsburgh, is authorized and directed to remove to a suitable six-acre (more or less) assembled plot in Mt. Royal Memorial Park, which it shall acquire at its expense, the remains of all the dead now buried in its Oakland Cemetery except the remains of those deceased persons buried there whose relatives and friends elect to remove them at their own expense to other burial grounds, which elections must be indicated before the actual removal of said remains to Mt. Royal is accomplished under this order.

2. Said removals by petitioner shall be at its expense and shall be made in a careful, dignified manner by qualified persons. In doing so, the remains shall be placed in separate caskets and graves, with the present headstones, monuments or other markers placed over the remains of said persons after reinterment in the same relative position as they occupied before removal, insofar as it is possible to do so. When, due to deterioration or other causes, it is impossible to remove present tombstones, markers, etc., a small granite marker with names and dates shall be placed on such graves at petitioner's expense.

3. Said newly acquired land in Mt. Royal Memorial Park shall, as nearly as possible, be plotted in the same manner as Oakland Cemetery is presently plotted, with

the present lot and plot owners assigned lots and plots containing the same number of graves as existed in their present plot in Oakland and with the same privileges therein as they presently have in Oakland; and further, said remains shall be interred therein in the same relative position as they are presently interred in Oakland Cemetery.

4. To those rightful persons who elect to remove the remains of any deceased person now buried in Oakland to a burial ground other than Mt. Royal, as previously authorized, petitioner shall pay the sum of four hundred ($400) dollars for each person's remains so removed on account of the expenses incurred for that purpose and for the release and surrender of all rights in the present grave in Oakland Cemetery from which the remains have been removed and in or to any lot or plot in Mt. Royal based thereon.

5. Petitioner is also authorized and directed to pay to any rightful owner of any presently unused graves in Oakland Cemetery the sum of one hundred ($100) dollars for the surrender and release of all interests therein and in or to any lot or plot in Mt. Royal Memorial Park assigned in substitution therefor. In the absence of any such payment and release the owner shall be assigned a grave in Mt. Royal in the same manner graves are to be located and assigned as previously provided in cases of reinterments and with the same rights as they possess in their lot or lots in Oakland.

6. When the whereabouts of present owners of unused lots in Oakland Cemtery are unknown and they cannot be found after diligent search, petitioner shall, at its expense, cause to be issued in its name cemetery deeds for each lot and plot in the Oakland Memorial Garden of Mt. Royal Cemetery to which such unfound persons may be entitled, to be held in escrow in a manner directed by the lower court for the benefit of such persons and to be delivered to them when found.

7. As soon as reasonably possible after the acquisition of the plot in Mt. Royal Cemetery, petitioner shall, at its expense, plant trees, shrubbery, and flowers to beautify it in a manner to establish it as a "Memorial Garden" and shall designate it as "Oakland Memorial Gardens" with an appropriate cross or other monument identifying it with the denominational faith of petitioner church.

8. The rights to and in any grave surrendered and released by the rightful owner as provided in previous paragraphs of this order shall become the property of petitioner. Furthermore, the right, title, and interest in and to all lots in Oakland Memorial Gardens unassigned to lot owners or to the petitioner for lot owners whose whereabouts cannot be determined shall also become the property of petitioner.

9. Before any work is commenced under this order, petitioner shall demand from the contractor or contractors engaged to perform the work authorized herein a performance bond with surety to be approved by the lower court for the complete and proper performance of all such contracts, within nine months from the date such work is commenced, which bond shall be for the benefit of all present lot owners in the Oakland Cemetery.

10. Upon the completion of the work of removing the remains aforesaid to Mt. Royal Memorial Park, petitioner shall arrange for the perpetual care of all lots in Oakland Memorial Gardens therein and shall deposit the sum of twenty ($20) dollars per grave, approximately 5,484 in number, with Family Memorial Investment Company which operates Mt. Royal Memorial Park, or such other trustee as may be designated by the lower court, for the purpose of investment, the income from which shall be used for that purpose. Such perpetual care shall be in accordance with accepted

cemetery practice and the laws of the Commonwealth of Pennsylvania.

11.  Upon the completion and fulfillment of the foregoing conditions of this order the present Oakland Cemetery shall be considered abandoned for burial purposes and petitioner shall be privileged to sell same in the manner provided for by the Acts of Assembly enacted for such purposes.

All costs of this proceeding shall be paid by petitioner.

And it is so ordered.