# Lukens Construction Co., Inc. v. Shar-Mich Corp.

*Carl F. Mogel,* for plaintiff.
*Gerald P. Sigal,* for defendant.

SAYLOR, *J.,* January 12, 1981—Plaintiff/ subcontractor brought this action in assumpsit seeking, in the absence of an actual contract between the parties, quasi-contractual recovery from the owner of land, Judith Rothman, for the value of improvements made to the land. Following a trial held before the trial judge sitting without a jury, a general verdict was entered in favor of plaintiff and against defendant, Judith Rothman, in the amount of $10,165.94 plus interest. Defendant, Rothman,

filed post-trial motions asserting that the verdict was against the weight of the evidence and contrary to the law.[1]

We must first determine the standard of review to be applied in this case. Defendant asserts that because the trial judge reached no specific findings of fact or conclusions of law outside of the general verdict rendered, the court sitting en banc must review the entire record and attempt to make its own determination of the facts. After examining the law on this issue we are constrained to agree. Clearly, although the findings of a trial judge sitting without a jury carry the same weight as a jury verdict, when no specific findings of fact or conclusions of law are reached outside of the decision rendered, the appellate courts consider it their responsibility on appeal to review the entire record and attempt to make their own determination of the facts and draw their own conclusions of the law based thereon: Idell v. Falcone, 427 Pa. 472, 235 A. 2d 394 (1967); Smith v. Peacock Construction Co., 214 Pa. Superior Ct. 324, 257 A. 2d 592 (1969); 2 Goodrich-Amram 2d §1038(e):2. The court en banc must, apparently, follow the same standard: Ballinger v. Howell Manufacturing Co., 407 Pa. 319, 180 A. 2d 555 (1962) (in absence of factual determination by the trial court, appellate court reviewed entire record, as did the court en banc). Therefore, upon review of the entire record, we make the following determination of the facts.

## FACTS

Defendant, Judith Rothman, was the developer

---

1. The complaint in this matter stated causes of action against both Judith Rothman and Shar-Mich Corp. Service upon the latter defendant was unsuccessful, however, and plaintiff proceeded at trial solely against Judith Rothman.

of a tract of land known as Wilshire Hills, Section No. 5. Although the subdivision originally consisted of 44 lots, on July 26, 1977, Mrs. Rothman sold 20 of the total number of lots. The proceeds of the sale, pursuant to a developer's agreement with Spring Township, were put in escrow in the American Bank to pay for the municipal improvements. Judith Rothman bought the tract on March 30, 1977, with her own funds. Judith Rothman's husband, Michael Rothman, a residential developer by profession, assisted Judith Rothman in laying out the development. Michael Rothman himself presented the development plan to the Township and obtained approval for that plan. Pursuant to her contractual obligation to perform municipal improvement work, including grading of roads to be built within the development, defendant engaged the Shar-Mich Corp. (Shar-Mich) to perform the work as general contractor. Defendant entered into a written agreement with Shar-Mich on March 15, 1978.

The original outstanding shares of Shar-Mich were issued on March 7, 1978, in the name of Michael Rothman and Judith Rothman. The first board of directors meeting of Shar-Mich was also held March 7, 1978, at which time Judith Rothman was chosen president of the corporation and Michael Rothman was chosen secretary-treasurer. At that same meeting, the newly elected officers resolved that Shar-Mich enter into an agreement with Judith Rothman designating Shar-Mich general contractor for the construction and/or development of municipal improvements of lots 14 to 24 of the development known as Wilshire Hills, Section No. 5, owned by Judith Rothman. This construction agreement, entered into evidence as Exhibit No. 2, provides that Shar-Mich agrees to act as general contractor for the construction of a munic-

ipal improvement in return for a total consideration of $70,000. The contract also provides that neither the general contractor nor any of its subcontractors may file a mechanic's claim or lien, and that the contractor shall file a Stipulation against Mechanic's Liens. The contract is signed by Judith Rothman, individually, and for Shar-Mich by Judith Rothman, President.

On March 17, 1978, on advice of counsel, Judith Rothman transferred her interest in Shar-Mich to her husband. Judith Rothman received *no* consideration for the transfer and a new stock certificate was issued solely in the name of Michael Rothman. It was not until April 20, 1978, however, that Judith Rothman resigned as president and director of Shar-Mich.

Plaintiff, Lukens Construction Co., Inc., is an excavating contractor. Michael Rothman requested the use of plaintiff's excavating equipment in order to grade certain streets in Judith Rothman's Wilshire Hills subdivision. Although plaintiff's employes operated the equipment, Michael Rothman supervised its use. Additionally, plaintiff subcontracted with another excavating firm for additional equipment and paid this firm approximately $9,000 for its services. Plaintiff's president, Norman Lukens, testified that at the time he contracted to perform the work, Michael Rothman "inferred" that he and his wife owned the particular property. At the time Mr. Lukens entered into the oral contract with Michael Rothman to perform the excavating work, he did not know of the existence of Shar-Mich and only later did Michael Rothman request that all bills be remitted to Shar-Mich. No testimony was adduced at trial with regard to the date that plaintiff and Michael Rothman entered into the oral contract, but plaintiff billed Shar-Mich for work performed between

April 26, 1978, and June 20, 1978. Plaintiff admittedly did not investigate to discover who in fact owned the land.

Mr. Lukens encountered Judith Rothman at the job site's construction shanty on two occasions. Plaintiff was introduced to Mrs. Rothman as "Lukens' Excavating Contractor" at their first meeting in May, 1978. The second meeting between Mr. Lukens and Mrs. Rothman occurred four or five weeks after the first meeting, at which time only plaintiff's subcontractor's equipment and not plaintiff's equipment was still on the job. Judith Rothman, however, does not recollect meeting Mr. Lukens. Although she acted as president of Shar-Mich until April 20, 1978, Judith Rothman denied any knowledge of the persons or entities with whom Shar-Mich subcontracted pursuant to its agreement with her. From the time of the inception of Shar-Mich and her election as an officer of the corporation, Judith Rothman relinquished all control of the Shar-Mich bank accounts to Michael Rothman and never signed checks issued on account of the Shar-Mich Corporation. Judith Rothman received the work performed by Shar-Mich and its subcontractors and did not pay Shar-Mich or any other party for work received. Michael Rothman died in the first week of October, 1978.

## DISCUSSION

We must determine under what circumstances Pennsylvania law permits recovery in actions based on quasi-contract where as here an unpaid subcontractor seeks recovery against an owner of land for improvements made to the land where no actual contract existed between a subcontractor and the landowner.

Under Pennsylvania law, quasi-contractual obli-

gations are recognized as obligations created by the law for reasons of justice: Schott v. Westinghouse Electric Corp., 436 Pa. 279, 290, 259 A. 2d 443, 449 (1969). Quasi-contracts must be distinguished from implied contracts and express contracts inasmuch as quasi-contracts are not based upon an actual promise or contract agreed upon by the parties: Schott, supra, 436 Pa. 290-91, 259 A. 2d at 449. An essential element to a cause of action in quasi-contracts is a finding of unjust enrichment. Principles of restitution require that a person who has been unjustly enriched at the expense of another is required to make restitution to the other party: Binns v. First National Bank of Calif., Pa., 367 Pa. 359, 372, 80 A. 2d 768, 776 (1951). The elements of a duty to make restitution under the theory of unjust enrichment require (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied: Meehan v. Cheltenham Township, 410 Pa. 446, 449, 189 A. 2d 593, 596 (1963).

In the Meehan case, cited above, the Pennsylvania Supreme Court apparently adopted section 110 of the Restatement, Restitution, which states: "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." The Meehan court interpreted the Restatement section to mean that "in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party." Meehan, supra, at 451, 189 A. 2d at 596.

In the Meehan case a subdivision developer subcontracted work to appellant for the paving of

streets as required by the municipal subdivision plan. The developer became insolvent and the streets were dedicated to the township. Appellant claimed the township had been unjustly enriched. The court noted that in such a situation, "[a]ppellant cannot shift the loss resulting from its error in judgment to one who may have been indirectly benefited by the performance of these services." Id 451.

Plaintiff in the instant case relies heavily on the case of DeGasperi v. Valicenti, 198 Pa. Superior Ct. 455, 181 A. 2d 862 (1962). In the DeGasperi case, plaintiff filed a suit in assumpsit against the Valicentis, husband and wife, to recover the remainder of an amount owed for work performed on three houses being built by husband under oral contract between plaintiff and husband alone. Plaintiff added the wife to its claim on the theory that she owned the lots on which the houses were erected and had received, without payment, the benefit of plaintiff's services. The evidence established that title to the three lots had been in the wife's name. The court stated that the testimony showed that under a "family arrangement," the property and the bank account from which payments on the contracts were drawn were held in the wife's name. Her husband testified that whenever he constructed a house on a lot owned by his wife, upon its sale the proceeds were used to pay outstanding subcontractors before paying the wife for the lot or dividing the profits. The court concluded from husband's testimony that with the consent of his wife he conducted the construction business and at the same time attempted to conceal his profits and his family's assets behind the legal ownership of his wife. The court found that the effect of these procedures would result, where creditors were not paid,

in an unjust enrichment to the wife. Thus, the De-Gasperi court upheld plaintiff's quasi-contractual claim against the wife on the theory of unjust enrichment.

The facts of the case at bar fall somewhere in between the Meehan situation and the DeGasperi situation. Because of the carefully orchestrated legal maneuvering by the Rothmans and the failure of plaintiff to adduce at trial any sort of evidence that Mr. Rothman was attempting to conceal his profits and his family's assets behind the legal ownership of the wife, the "misleading" element is not as readily apparent as in the DeGasperi case. The facts adduced at trial which might favor a finding of some sort of "misleading" are that Judith Rothman and Michael Rothman were owners by the entireties of the sole stock in Shar-Mich, that Shar-Mich was created solely as a vehicle for the construction of Wilshire Hills subdivision, that Judith Rothman as president of Shar-Mich entered into a contract with Judith Rothman acting individually, that Judith Rothman was president of this corporation until April 20, 1978, that Judith Rothman transferred her interest in Shar-Mich to her husband in return for no consideration, that plaintiff was led to believe that the tract on which he performed his work was owned jointly by Mr. and Mrs. Rothman, that Mrs. Rothman did not pay Shar-Mich for the work performed pursuant to the contract, that in the contract entered into between Shar-Mich and Judith Rothman a Stipulation against Mechanic's Liens was required and, of course, a benefit was conferred upon Mrs. Rothman's land by plaintiff for which she exchanged no value.

Plaintiff expended a substantial amount of trial time in attempting to prove that Judith Rothman

had notice or reason to know that plaintiff was performing services on her property. Under certain fact situations, quasi-contractual recovery is allowed where services are performed under circumstances which put the recipient of the benefit on notice that the party performing the services expected to be paid: Colish v. Goldstein, 196 Pa. Superior Ct. 188, 192, 173 A. 2d 749, 751 (1961); Sachs v. Continental Oil Co., 454 F. Supp. 614, 619 (E.D. Pa. 1978). In both the above cited cases, however, the facts were that plaintiff had performed services directly upon request of defendant, and defendant denied any contract, express or implied, existed. This theory of recovery is obviously not applicable to the case at hand.[2]

The factors favoring the finding of a misleading that we list above do not serve to bring this case

---

2. It does not appear that recovery on agency principles could be applied to the instant fact situation, either. Although, with respect to entireties property, there is a well-established presumption that during the term of a marriage either spouse has the power to act for both, without specific authorization, so long as the benefits of such action inure to both: Kennedy v. Erkman, 389 Pa. 651, 658, 133 A. 2d 550, 553 (1957). For liability to be established under this rule there must be a showing that a husband exercised his power to act on behalf of his wife: Roman Mosaic & Tile Co., Inc. v. Vollrath, 226 Pa. Superior Ct. 215, 313 A. 2d 305 (1973). A wife could only be held liable on such a contract if her husband, as her agent, *intended* to act on her account when he executed the contract: Roman Mosaic, supra; John M. Rouse, Inc. v. Logan, 268 Pa. Superior Ct. 376, 379, 408 A. 2d 514, 515-16 (1979). In the instant case not only was there no evidence that Michael Rothman intended to act as Judith Rothman's agent when he ordered plaintiff to do the work on the property, but the property was not even, in fact, entireties property. Further, plaintiff nowhere contends that he was induced to do the work on the representation that both husband and wife owned the land jointly and relied on such representation to his detriment.

within the ambit of the DeGasperi situation. We are unable to conclude, based on a preponderance of the evidence, that facts exist amounting to a misleading perpetrated by Judith Rothman. This does not resolve our consideration of the issues, however, because only recently two separate Pennsylvania Superior Court panels have had opportunity to review the sagacity and continuing validity of the strict rule enunciated in the Meehan case. The two panels appear to have reached contradictory results, however.

The case decided earliest in time, Gee v. Eberle, 279 Pa. Superior Ct. 101, 420 A. 2d 1050 (1980)[3] is closest on the facts to the instant matter. In Gee, eleven subcontractors sought recovery against an owner of property on the theory of unjust enrichment. Appellants were subcontractors at a shopping center construction site. The owners had executed a mortgage in favor of Hamilton Investment Trust as security for a construction loan. The trustees of Hamilton Investment Trust were appellees on appeal of this matter. At a time when most but not all the loan amount had been advanced to the owners, the owners defaulted. Thereafter, the mortgagee foreclosed against the owners and completed the project themselves. The mortgagee (trustees of Hamilton Investment Trust) then purchased the property at a sheriff's sale. At the time of the sheriff's sale 11 subcontractors remained unpaid for the value of improvements to the property. None of the 11, except one who prevailed at trial, ever verified prior to beginning work on the project that the project was adequately financed. All subcontractors had filed mechanic's liens. The subcon-

---

3. Opinion filed May 9, 1980, per Spaeth, Stranahan and Sugarman, JJ. Opinion by Spaeth, J.

tractors, prior to the sheriff's sale, obtained a temporary restraining order enjoining the transferor and transferee from transferring the property free of the liens. However, at trial the subcontractors' action was changed to one of recovery on the theory of unjust enrichment. The trial court found against the subcontractors on the grounds that they had been unable to show any reliance on assurances from the mortgagee that the owners were adequately financed. The subcontractors argued on appeal that their unsatisfied claims should be satisfied out of the mortgagee's unexpended loan funds.

The Superior Court phrased the issue presented in Gee as follows: Whether under Pennsylvania law an unpaid subcontractor should be permitted to recover against a lender upon proof that as a result of the subcontractor's work, the lender has been unjustly enriched. The court, in attempting to answer the issue phrased, entertained the following query, 279 Pa. Superior Ct. at 115, 420 A. 2d at 1058:

"Suppose, however, that the unpaid subcontractor claims that the *owner*, rather than the lender, has been unjustly enriched. Will the action lie? In many jurisdictions, the answer is that it will not. . . . Furthermore, cases denying recovery against an owner are especially pertinent to the present case, *for Hamilton may be regarded so far as its possible liability on a claim of unjust enrichment is concerned, either as a lender or as an owner.*" (Emphasis supplied.)

The court, therefore, proceeded to examine the cases in other jurisdictions where the pertinent issue was whether an owner may be liable to a subcontractor on a theory of unjust enrichment

and under what conditions. The court observed that the cases may be divided into three categories: those that require proof that the owner has engaged in some wrongdoing or misrepresentation (the Meehan situation); those that require proof that the subcontractor has exhausted statutory or contractual remedies; and those that require some sort of direct contractual relationship between the subcontractor and the owner. The court noted preliminarily that, "it is not apparent to us, however, why a subcontractor should have to satisfy any of these additional requirements to make out a case of unjust enrichment," at 117, 420 A. 2d at 1059.

The court, therefore, reviewed all three requirements and found none justifiable. The court noted that several prior superior court cases stated the principle that claims of unjust enrichment may be allowed even in the absence of misrepresentation: Kimball v. Barr Township, 249 Pa. Superior Ct. 420, 425, 378 A. 2d 366 (1977) ("Our courts focus not on intention, but on the result of unjust enrichment"): Scott v. Purcell, 264 Pa. Superior Ct. 354, 399 A. 2d 1088 (1979) (recovery allowed on claim of unjust enrichment against corporation even in absence of proof of wrongdoing on part of corporation); Roman Mosaic and Tile Co., Inc. v. Vollrath, 266 Pa. Superior Ct. 215, 313 A. 2d 305 (1973) (recovery on claim of unjust enrichment allowed where defendant wrongfully secured or *passively* received a benefit that it would be unconscionable[4] to retain). In addition, the court saw no reason why an owner should be entitled to retain an enrichment merely because the subcontractor has failed to file a me-

4. Depending on the intention of the parties, retention of a benefit may or may not be unconscionable: "Where, for example, one party gives a second one a piece of property with no expectation of payment in return, it would not be 'unconscionable' for the second party to retain the property." Gee v. Eberle, at 118, fn. 7, 420 A. 2d at 1059, fn. 7.

chanic's lien[5] or to sue the general contractor. In the former situation, the loss of procedural advantages offered by the mechanic's lien law "is penalty enough."[6] In either instance, the requirement that remedies be exhausted "serves no useful purpose." Gee v. Eberle, 279 at 118, 420 A. 2d at 1060. The requirement that a direct contractual relationship exist appeared equally irrational to the Gee court since "the essence of the doctrine of unjust enrichment is that there is *no* direct relationship between the parties." Id., 279 at 119, 420 A. 2d at 1060. (Emphasis supplied.) In fact, an action in quasi-contract does not properly lie when a direct relationship does exist. The Gee court concluded at p. 120, that although cases allowing an unpaid subcontractor to recover in the absence of any of the three requirements discussed above represents a minority view, "[w]e nevertheless think it sound, and consistent with our decisions on the nature of a claim of unjust enrichment." See S&M Rotogravure Service v. Baer, 77 Wis. 2d 454, 252 N.W. 2d 913 (1977).

In Crossgates Realty, Inc. v. Moore, 279 Pa. Superior Ct. 247, 420 A. 2d 1125 (1980),[7] the sec-

---

5. We note that in the case at bar, the contract between Judith Rothman and Shar-Mich required Shar-Mich to file a Stipulation against Mechanic's Liens.

6. See contra, Myers-Macomber Engineers v. M.L.W. Construction Corp., 271 Pa. Superior Ct. 484, 414 A. 2d 357 (1979).

7. Opinion filed June 27, 1980, per Price, Hester and Cavanaugh, JJ. Opinion by Cavanaugh, J.

We note that both the decisions in Gee and Crossgates Realty were filed subsequent to the trial court's decision in the instant action. However, "[a] change of the established law by judicial decision is retrospective. It makes the law at the time of prior decisions as it is declared in the last decision, as to all transactions that can be reached by it. On the other hand a change in the settled law by statute is prospective only." Fox v. Snow, 6 N.J. 12, 14, 76 A. 2d 877, 878 (1950).

ond of the recent Superior Court cases considering claims of unjust enrichment, the court did not go so far as to abandon prior case law. In Crossgates Realty, plaintiff requested defendant, acting as agent for plaintiff, to negotiate a lease on certain property and to obtain an option to purchase. Defendant procured the lease as requested but, in conjunction with his wife, entered into an agreement of sale with the property owner. Plaintiff filed a complaint in equity seeking an order directing defendant and his wife to transfer their interest in the agreement of sale to plaintiff. The issue raised on appeal was whether defendant's wife, who owed no ficuciary duty to plaintiff, was required to transfer her interest in the property to plaintiff. The court held that despite the absence of knowledge or wrongful intent on the part of defendant's wife, she "'passively received a benefit that it would be unconscionable for her to retain.'" at 252, 420 A. 2d at 1128, quoting Roman Mosaic & Tile v. Vollrath, 226 Pa. Superior Ct. at 218, 313 A. 2d at 307, supra. The court defined the word "passively" as denoting not inactivity but rather "the innocence of the party benefiting from *another's* wrongdoing." at 252, fn. 2, 420 A. 2d at 1128, fn. 2. (Emphasis supplied.) Thus, the Crossgates Realty court required a wrongdoing on someone's part although not necessarily the one who retains the enrichment. Further, the court acknowledged the existence of the rule that mere failure of performance by the contracting party does not give rise to a right of restitution against a third party in the absence of some misleading by the third party.[8]

---

8. The Crossgates Realty court distinguished the applicability of the above cited rule to the case before it on the grounds that the claims of unjust enrichment made out by plaintiff, Crossgates Realty, was *independent* of any contract.

Thus, we are faced with a conflict among and between past and present law. We believe, however, that the decision reached in Gee v. Eberle is properly reasoned and we follow the principles enunciated therein in making our determination.

No doubt exists that Judith Rothman retained the enrichment. Although not rising to the level of a misleading, she repeatedly contracted with related parties in a manner that precluded or rendered unlikely recovery by a subcontractor for value of improvements made. We hold that it would be unconscionable to allow Judith Rothman to retain the benefits conferred by plaintiff and conclude that she was unjustly enriched as a result of the work done; it is on the unjust enrichment that we focus. We accordingly enter the following

## ORDER

January 12, 1981, defendant's exceptions are dismissed and we direct that judgment be entered in favor of plaintiff and against defendant, Judith Rothman, in the amount of $10,165.94, together with interest thereon at the rate of six percent from July 28, 1978.