## Barth, Appellant, *v.* State Farm Fire and Casualty Company.

Argued March 19, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Henry E. Skaroff,* with him *Skaroff and Skaroff,* for appellant.

*Albert L. Bricklin,* with him *Joel Paul Fishbein,* and *Bennett, Bricklin & Saltzburg,* for appellee.

OPINION BY HOFFMAN, J., June 13, 1969:

This is an action in assumpsit by the owner of a grocery store against an insurer which refused to make payment on an insurance policy.

Appellant, the store owner, testified that he and an agent of the defendant insurance company negotiated a contract of insurance for appellant's grocery business. They reached an understanding and thereupon the agent filled out a coverage schedule on the back of a six page foldout brochure detailing the scope of coverage available. As the representations made in the brochure are important to the disposition of this case, a brief description of the brochure follows:

The front page contains an artist's rendition of an insurance agent and an insured happily scanning an insurance policy. In prominent lettering appears the legend "Now Cash In On Benefits of 'Package Merchandising in . . . *Your Insurance.*' The New Special Mercantile Package Policy Combines the Insurance

for Your Business into One Neat Package for 1. Better Protection against Risks and Perils. 2. Time Saving Convenience Centralization of Coverage. 3. Premium Savings over Coverage Bought in Separate Policies. Just one policy—one agent to consult, one renewal date, and one premium to pay." Opposite this description is a picture of an open carton labeled "Mercantile Package Policy."

The following three pages contain thirty-four sketches of different hazards against which the insured is protected, each accompanied by a brief textual description of the coverage involved. In addition, running across the bottom of these three pages is an insert labeled, "A Choice of 'All Risks' Coverage . . . Plus any of these Important Coverages . . . All at Attractive Discounts!" Underneath this legend is a series of eight pictures of the types of hazards covered by this "All Risk" insurance. One picture portrays a thief handing a typewriter to his confederate through the window of business premises. Apparently this transaction takes place when the premises are closed to business. Below this rendition appears the notation "Open Stock Burglary, or Storekeepers Burglary & Robbery, or Comprehensive Crime, may be added."

On the last two pages appears another picture of two smiling men, apparently an insurance agent and an insured, looking into the contents of a huge open box labeled "Special Package for Wholesalers and Retailers."

Opposite this picture is a schedule with columns entitled "Property and Perils Covered" and "Coverage (Amount)". Twenty-seven different hazards are listed under "Property and Perils Covered." One such category is "Comprehensive Crime Insurance." Another is "Open Stock Burglary Insurance." In the column labeled "Coverage (Amount)" entries were made by the insurance agent in thirteen categories of hazards.

Among these entries were the sum, 3,000 for Open Stock Burglary Insurance and 1,500 for Comprehensive Crime Insurance. In the column to the right of these entries appears the total insurance premium which was $256.00. Underneath this figure is an arrow within which is printed the legend "One policy/one agent/one renewal date/one premium."

It is undisputed that the insurance agent, who had authority to represent the insurer, typed in the various sums in the Amount column on the schedule in accordance with the directions of the store owner. Thereupon, on November 3, 1966, the agent wrote in longhand on the front page of the brochure "Nov 3, 1966 Received $50.00 Cash to apply against SMP policy effective 11-3-66 (signed) Felix J. Longo."

Several weeks later, appellant received an insurance policy in the mail. The policy is nineteen pages long and contains several pages of concise technical language with small print narrowly spaced.

On the sixth page of the policy is a "Mercantile Robbery and Safe Burglary Coverage Form." Therein, it is stated that appellant's grocery store is insured for "1,500" for "Robbery Inside the Premises." Appearing below this coverage, but, outside the printed box where the coverage is listed, is the provision that the coverage shall only be in effect "when the premises are open for business."

Appellant, upon receiving the insurance policy, did not read it.

Thereafter, before the term of the policy had expired, cash which had been secreted in hiding places about the store was stolen during non-business hours.

Appellant made demands upon the insurer to reimburse him for his loss and such payment was refused.

Thereupon this action was brought.

Trial was held before Judge O'DONNELL sitting without a jury. At trial, the insurer denied coverage and

maintained that its agent told appellant that the policy would not insure him against robberies "occurring during non-business hours and when no one was on the premises." This testimony was disputed.

Judge O'DONNELL found for the insurance company. Exceptions were filed. Judge O'DONNELL died, however, before passing on these exceptions, writing an opinion or otherwise indicating findings of fact and conclusions of law.

The lower court sitting en banc, affirmed and this appeal followed.

As Judge MONTGOMERY has stated "Since the lower court made no specific findings of fact or conclusions of law but merely rendered a decision, it now becomes our responsibility on this appeal to review the entire record and attempt to make our own determination of the facts and draw our own conclusions of law based thereon. (Citations omitted)." *Smith v. Peacock Construction Company*, 214 Pa. Superior Ct. 324, 257 A. 2d 592 (1969).

The thrust of appellant's argument is that the insurance company led him to rely on the representations made in the insurance brochure, and that these representations should be considered as elements of the contract. Specifically, he maintains that the brochure's description of "Comprehensive Crime Insurance" and other representations of "all risk" "single package" one policy protection were so misleading as to constitute an estoppel which would excuse him from reading the policy and ascertaining whether the language therein coincided with the brochure's representation.

Couch on Insurance 2d (Anderson Ed., 1959), states: "Generally it may be said that a prospectus, pamphlet, schedule, or illustration which is not attached or referred to in the policy, does not form a part of the contract, and is not binding on the insurer.

*However, the facts may be such as to warrant a different conclusion, as, for example, where published advertisements which were knowingly false have been regarded as rendering the company liable to one who acted upon the statements therein."* §4:42 (Emphasis added).

While our research and that of the parties have failed to uncover any Pennsylvania cases dealing explicitly with this doctrine, several helpful cases from other jurisdictions have come to light. For instance in *Coastal States Life Ins. Co. v. Raphael,* (1966, Fla. App.) 183 So. 2d 274, the court affirmed the chancellor's decree that the life insurance policy in question be reformed to include the terms of a prospectus furnished to plaintiff by the insurer's agent, which prospectus, containing provisions for payment or return in somewhat greater amount than the policy in certain respects, was relied on by the insured.

The court stated "Plaintiff's right to reformation (based on his reliance on the prospectus) was not barred by a statute of limitations, laches or estoppel, as a result of his failure to read or examine the policy during the intervening period."

Similarly in *Providential Life Insurance Co. v. Clem,* 240 Ark. 922, 403 S.W. 2d 68 (1966) the Arkansas Supreme Court held that even though a group policy was available for inspection by the insured a solicitation pamphlet which stated that the policy would cover a certain loss could not be negated by a specific exclusion in the policy, and may be relied upon by the beneficiaries who had purchased the policy to cover their son. The court stated that the pamphlet ' "*the form of which was prepared by the insurance company, clearly states those things not covered by the policy. The insurance company had no right to add other exclusions to the policy without the approval of the applicant.*' (Citation omitted)" (Emphasis added.)

In *Farmers Mutual Auto Insurance Co. v. Bechard,* (South Dakota), 122 N.W. 2d 86, 1 ALR 3d 1124 (1963) the court allowed the oral representations of the insurance agent to limit the exclusions in the written policy. In language, which bears directly on the facts in this case, the court stated "It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policy holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps for the unwary. The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policyholder such provisions as the one before us. The Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. . . ." Indeed, "the applicant usually tells the insurer's agent of his coverage necessities and relies on the agent for a policy in accordance therewith. . . . We conclude an insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein."

Other cases are collected in "Insurer's Statements as to Amount of Dividends, Accumulations, Surplus, or the Like as Binding on Insurer or Merely Illustrative." 17 ALR 3d 777 (1968) and "Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by Its Terms Or Expressly Excluded Therefrom." 1 ALR 3d 1139 (1965).

If the insured in the instant case did in fact rely upon the representations in the brochure, these representations should be considered as terms of the insurance contract. Unlike situations where a brochure is used solely for advertising purposes, and is so understood by the parties, the attendant circumstances here negate this conclusion. -The brochure's representations cannot be considered mere "puffing" due to the fact that it listed in a schedule specific coverages including "Comprehensive Crime Insurance", had a picture representation of burglary occurring during non-business hours and was labeled "All Risk." Moreover, the last page contained a schedule filled in at appellant's direction which was regarded as the basis for contract effective November 3, 1966, weeks before any policy was sent to the insured.

In addition, the insurance company failed to note on the brochure that the terms in the brochure do not represent contract terms. Instead, in fine print, it noted at the bottom on the fourth page, that "This is a general description, subject to some territorial variations. Consult an actual policy for specific definitions, extensions and limitations." Insofar as the "actual policy" referred to was unavailable to the insured at the time the insurance became effective, this caveat was illusory. Furthermore, since this notation is not prominently displayed in the six page brochure, appears in tiny print, and was not stressed by the insurer in any manner, we do not believe that it can

have the effect of rendering void the rather clear representations of all risk comprehensive crime insurance policy mentioned throughout the brochure.

In such light, this case is remarkably similar to the problem dealt with in *Mohan v. Union Fidelity Life Ins. Co.*, 207 Pa. Superior Ct. 205, 216 A. 2d 342 (1966), where this court adopted the lower court's opinion written by Judge SLOANE reported at 38 Pa. D. & C. 2d 401.

In *Mohan*, we held that where an endorsement to an insurance policy states in "bold letters that leap to the eye: 'PAYCHECK-PLUS' SICKNESS AND ACCIDENT BENEFIT ENDORSEMENT" the insurer should be precluded from showing that the specific benefits schedule of the policy provides for reimbursement to the insured of less than his full salary in case of sickness. As Judge SLOANE stated " 'Paycheck' is an alluring word, plump with meaning and a bolstering incitement for the purchaser of a health-accident policy. The simple thought is the plain thought that the policy will pay the 'paycheck'.

"Since defendant wrote the policy, there is as high a duty on it to be straightforward about it as the duty of plaintiff to scrutinize its terms.

"The intent of the policy, so conspicuously manifested in its bold headline, makes obvious the need for this high duty." At 410-411.

Similarly, in the instant case, the insurance brochure and schedule was clear in its insistence that appellant was insured for "All Risk" "Comprehensive Crime Insurance". This manifests that the insured would be covered for all losses to the extent of the coverage amount stemming from crime committed against his property. The natural response is to expect that the formal policy would embody in formal terms this coverage.

Thus, the representations in the brochure, if they have been reasonably relied upon by the insured, may be considered terms of the contract. Unresolved, however, is the question whether the insured was in fact informed at the time that the insurance coverage became effective, that coverage for loss of cash during non business hours, was excluded. If he was so informed, there could be no actual reliance upon the brochure as it relates to that question; and the principle set forth in *Mohan* is inapplicable. Judge O'DONNELL, however, may not have passed on this issue, since this case may have been decided exclusively on the basis that the nineteen page insurance policy was complete on its face. As Judge O'DONNELL is now deceased, we are unable to remand this case to him for this determination. *Smith v. Peacock Construction Co.*, supra.

Instead, judgment is vacated and this case is remanded for a new trial limited to this single factual determination.