Daniel J. VOGEL and Desmia G. Vogel, Plaintiffs-Appellants,

v.

AMERICAN WARRANTY HOME SERVICE CORPORATION and/or Its Successors, Pioneer Warranty Corporation, Defendants-Appellees.

No. 81-4413.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1983.

---

6. The industrial leases were not on the part of the tract that was taken in fee and hence were not affected by the takings.

Before CLARK, Chief Judge, and RUBIN and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Daniel J. Vogel (Vogel) and his wife, Desmia G. Vogel (Ms. Vogel), bought a home in Biloxi, Mississippi, for $49,895.70 from Dr. Vincent and Ms. Dwight Jan Rath Kiley. Because he was a retired military officer, unfamiliar with home construction and repairs, Vogel desired a warranty against defects, and as part of the negotiated transaction, the sellers delivered to the buyers a document entitled Home Buyer's Protection Plan, issued by American Warranty Home Service Corporation (American), for which the sellers paid $195.[1] American published a brochure captioned "The Sign of Quality—12 Month Limited Warranty," that purported to explain the Protection Plan. The brochure stated that the policyholder would be protected "against MAJOR repair bills resulting from hidden defects in material or workmanship, and from defects caused by neglect or improper maintenance by the previous owner."[2] A copy of this brochure was delivered to Vogel when the sale of the house was closed and Vogel testified that he read it and relied on it.

At the closing of the house sale, the real estate agent who represented the sellers presented Vogel with a five-page document, interleaved with carbon paper, captioned "Inventory Report" on the first sheet. The next three sheets are copies of the first sheet, and the backs of these four sheets are blank. The back of the fifth sheet is captioned "One Year Limited Warranty— $65.00 & $135.00 deductibles—$6,000.00 maximum liability." Section 2 of the printed material on the fifth sheet sets forth a "limited warranty agreement" between American and the Vogels. Clause (c)(2) of

Paul S. Minor, Paul T. Benton, Biloxi, Miss., for plaintiffs-appellants.

Earl L. Denham, Ocean Springs, Miss., for defendants-appellees.

1. Pioneer Warranty Corporation is the successor to American.

2. It also states: "The warranty is intended to guard against unexpected MAJOR repair bills." It includes an illustration with arrows pointing to parts of a diagram of a home. One such arrow bearing the numeral 6 points to a basement wall. The margin of the brochure notes: "6. STRUCTURAL SYSTEM—Walls, floors, ceilings, roof, foundation and roof covering up to ten years old."

that section states that no protection is provided for structural components unless "[b]uyers shall have to expend more than $135.00 to repair a 'collapse, shifting, or moving of all or a portion of the home caused by a sinking foundation, defective workmanship, or faulty materials which results in a crack or opening at least THREE–QUARTERS OF AN INCH wide extending though a load bearing structural component."

The statement in the brochure that the policy provides protection against damages "resulting from hidden defects" is unqualified. Nothing in the brochure refers to limitations that might be contained in another document. The "limited warranty agreement" on the back of the last page of the Inventory Report in turn makes no reference to the brochure. Vogel did not read the "limited warranty agreement." He testified that he read the top page of the "Inventory Report" and accepted it in reliance on the representations in the brochure that had previously been given him.

Nine months later, in February, 1979, water began flowing into the downstairs floor of the house, where Vogel's office, garage, and laundry room were located. This continued each time it rained and for several days thereafter over a period of several weeks, and has recurred each spring. The Vogels have suffered substantial water damage to their home and allege consequential damages in addition, including the cost of relocating Vogel's office, inconvenience, and distress. The water enters through a crack less than three-quarters of an inch wide. The defect is not, therefore, covered by the terms of the limited warranty.

The Vogels sued American, alleging "tortious breach of contract, fraud and misrepresentation in the inducement," and "breach of fiduciary allegations [sic]," relying on the theory that the contract imposed a fiduciary duty on American. The Vogels contended that the brochure was a part of their contract with American and that its representations constituted terms of their contract, either because it merged with the "limited warranty agreement" or because it fraudulently misrepresented the contents of that agreement. The case was tried to a jury, and the trial judge, over the Vogels' protest, charged the jury that the Vogels must prove all of their case by clear and convincing evidence. Because the trial judge later responded to a jury question on a crucial issue without consulting counsel and thereby foreclosed that issue from the jury's consideration, we are compelled to reverse. We discuss first the significance of this issue.

## I.

■ A crucial issue was whether the terms of the brochure could constitute covenants between the Vogels and American. The traditional view does not hold an insurer liable for representations made in promotional literature. "However, the facts may be such as to warrant a different conclusion, as, for example, where published advertisements which were knowingly false have been regarded as rendering the company liable to one who acted upon the statements therein." 1 G. Couch, Cyclopedia of Insurance Law § 4:42 (Andersen ed. 2d ed. 1959) (footnote omitted). Some states, moreover, bind an insurer to representations in its brochures, either as part of the contract or on the basis of estoppel, apparently without requiring proof that the brochure is intended to deceive or defraud. *See Barth v. State Farm Fire & Cas. Co.,* 214 Pa.Super. 434, 257 A.2d 671 (1969); *Providential Life Ins. Co. v. Clem,* 240 Ark. 922, 403 S.W.2d 68 (1966); *Craver v. Union Fidelity Life Ins. Co.,* 37 Ohio App.2d 100, 307 N.E.2d 265 (1973).

■ Mississippi jurisprudence does not resolve the question. However, the Mississippi insurance code does prohibit false representations, Miss.Code Ann. § 83–5–35(a) (1972), and Mississippi has adopted the doctrine of promissory estoppel set forth in section 90 of the Restatement of Contracts.[3]

---

3. *Sanders v. Dantzler,* 375 So.2d 774, 776–77 (Miss.1979); *Martin v. Dixie Planing Mill,* 199     Miss. 455, 24 So.2d 332, 334 (1946) (en banc);

We conclude that a Mississippi state court would hold an insurer estopped to deny that an insurance contract contains a clause that he represented to be among its terms after the insured relied on that representation. If Vogel can establish by clear and convincing proof that American's agents fraudulently misrepresented the terms of American's contract, or by a preponderance of the evidence that, without fraudulent intent, American's brochure misrepresented the contract and that he relied on that misrepresentation, the brochure's terms should be considered part of the contract.

■ American argues that the evidence disproves Vogel's contention that he relied on the brochure. It stresses his testimony that he had been a Lieutenant Colonel in the Air Force, was himself in the life insurance business, and understood the difference between promotional literature and a policy or a warranty. It contends that he did not even receive the brochure until after he had already signed a contract obligating him to buy the house. This provides a jury argument but does not establish nonreliance as a matter of law. While Vogel did sign a contract to purchase the home and did make an escrow deposit before receiving information on American's Protection Plan, the seller had agreed to furnish him a warranty. It is at least arguable that Vogel would not have proceeded with the sale had the brochure proffered at the closing been unsatisfactory.

## II.

After the jury had been instructed and had retired to deliberate, the foreman sent a note to the judge, which read:

Is the promotional literature (Exhibit p–1) a part of the contract (Exhibit p–3) according to the law?

Without advising the parties that he had received a note and without consulting with

them on a suitable reply, the judge answered: "No." This, of course, left the Vogels without leg or contract to stand on, and the intelligent jury soon thereafter returned a verdict for American.

■ It is evident that the judge's reply to the jury was tantamount to directing a verdict for the defendant. We have often held that it is error for a judge to reply to communications from the jury without consulting counsel. Supplementary instructions to the jury "ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and whenever practicable, the jury ought to be recalled to the courtroom." *Fillippon v. Albion,* 250 U.S. 76, 82, 39 S.Ct. 435, 437, 63 L.Ed. 853, 855 (1919); *Dixie-Land Iron & Metal Co. v. Piedmont Iron & Metal Co.,* 583 F.2d 717 (5th Cir.1978) (per curiam); *Petrycki v. Youngstown & Northern R.R.,* 531 F.2d 1363 (6th Cir.1976). However, if the error is harmless, the judgment is not reversible. *American Life Ins. Co. v. Florida Anglers Ass'n,* 185 F.2d 460, 463 (5th Cir.1951); *see also Dixon v. Southern Pacific Transp. Co.,* 579 F.2d 511 (9th Cir.1978).

■ This case indicates the reason for the rule. Had the judge conferred with counsel, the lawyers for the Vogels (and perhaps even those for American) might have made clear to the judge that the case was based on the thesis that the promotional literature was indeed part of the contract and that the real issue was whether it had become part of the Protection Plan because of fraudulent misrepresentation or merger or for some other reason urged by the Vogels. The judge's supplementary instruction foreclosed this issue. We must, therefore, reverse the judgment and remand the case for a new trial. In view of this, we

*Brewer v. Universal Credit Co.,* 191 Miss. 183, 192 So. 902 (1940); *Lusk-Harbison-Jones v. Universal Credit Co.,* 164 Miss. 693, 145 So. 623 (1933). The Restatement reads: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of

the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1) (1981).

discuss only the issues likely again to be raised.

## III.

In Mississippi, as at common law and in the federal courts generally, the plaintiff's burden of proof in a civil action is to establish issues of fact by the preponderance of the evidence. *Producers Gin Ass'n v. Beck,* 215 Miss. 263, 60 So.2d 642, 644 (1952); *Strachan Shipping Co. v. Shea,* 406 F.2d 521, 522 (5th Cir.) (per curiam), *cert. denied,* 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969); F. James, Civil Procedure § 7.6 n. 9 (1965); 9 J. Wigmore, Evidence § 2498 (Chadbourn rev. 1981). When fraud is an issue, the plaintiff must prove that charge by clear and convincing evidence, *Stewart v. Domestic Loans of Brookhaven,* 199 So.2d 444, 445 (Miss.1967), but other issues, even in a case grounded on fraud, require only proof by preponderance.

Nonetheless, the trial judge erroneously instructed the jury five times that the Vogels were held to a higher standard of proof.[4] The jury should have been instructed that only in proving fraud were the plaintiffs required to adduce clear and convincing evidence. They could establish other charges by a mere preponderance of the evidence.[5]

## IV.

The Vogels assert that the Protection Plan is an insurance contract, American that it is a contract of limited warranty. The Vogels complain that the trial judge left to the jury to decide, without adequate instruction, whether or not the agreement was a contract of insurance. This dispute is significant only if, under Mississippi law, an insurer has as a matter of law a fiduciary relationship to an insured.[6] The Vogels' complaint alleges a breach of fiduciary obligations. Under the

4. With regard to burden of proof generally: ... the burden of proof is on the plaintiffs in this civil action to prove their case by clear and convincing evidence .... Now clear and convincing evidence is more than a mere preponderance of the evidence.

With regard to alleged ambiguity of the contract:

If you believe from clear and convincing evidence in this case that the instrument in question contains a clause or clauses that are ambiguous and subject to more than one meaning, then you are instructed to construe those ambiguous provisions, if any, more strictly against the defendant ...

With regard to the alleged breach of fiduciary duty:

... if you so find by clear and convincing evidence, you may return a verdict for the plaintiffs ....

With regard to the weight of the evidence required for a finding that Vogel relied on the representations in the brochure and even with regard to proof that the Vogels had suffered damage, the judge repeated similar instruction.

5. American argues that the district court's erroneous instruction is not reversible error, relying on the Mississippi Supreme Court's decision in *Producers Gin Ass'n v. Beck,* 215 Miss. 263, 60 So.2d 642, 644 (1952), not to reverse a judgment even though the jury had been improperly instructed that the plaintiff must prove his case by a preponderance of clear, convincing, and credible evidence. The Mississippi Supreme Court's holding was premised,

however, on a rule of that court prohibiting reversal of a judgment for misdirection of a jury unless a miscarriage of justice had resulted. Miss.Sup.Ct.R. 11. We have not relied on the erroneous jury instruction in this case as the ground for reversal, but it is manifest that the procedural rules of the Mississippi Supreme Court do not bind us.

6. "A contract of insurance," in Mississippi, "is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss, or injury of something in which the assured or other party has an interest, as an indemnity therefor." Miss. Code Ann. § 83-5-5 (1972). The Mississippi Attorney General has rendered an opinion that limited home warranties are contracts of insurance, and the Mississippi Department of Insurance has been so advising companies that offer such warranties. Indeed, after the events giving rise to this litigation, the Mississippi Department of Insurance informed American, by letter ruling, that it considered American to be in the business of selling insurance. The Department requested American to cease writing limited home warranties in Mississippi until American had complied with the applicable Mississippi insurance regulations. American has not written limited home warranties in Mississippi since then. Whether the Protection Plan in this case is a contract of insurance, however, is for the jury to determine.

general rules of Mississippi contract law,[7] the existence of a fiduciary relationship is for the jury to determine. *Parker v. Lewis Grocer Co.,* 246 Miss. 873, 153 So.2d 261 (1963); *Carter Equipment v. John Deere Indus. Equipment,* 681 F.2d 386, 389–92 (5th Cir.1982). The parties have not adequately addressed in their briefs whether an insurer is, as a matter of law, the fiduciary of his insured in Mississippi. We are thus unable to assess whether the trial court erred in failing to instruct the jury on the legal principles that distinguish an insurance contract. Because our holding does not turn on this point, we do not now attempt to decide it.

## V.

Should the Vogels establish that, under the Protection Plan, American owed a duty to pay the cost of repairing the defect in their home and the consequential damage they suffered, they may also have a claim for punitive damages. In Mississippi, punitive damages may be awarded for denial of a legitimate contractual claim attended by an intentional wrong or such gross negligence as to amount to an independent tort. *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239 (Miss.1978); *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 398 (Miss.1975). This circuit interprets *Veal* to mean that, if the insurer offers no justifiable reason or arguable basis under Mississippi law for denying a valid claim, the trial judge must submit to the jury the issue whether punitive damages are owed. *Black v. Fidelity & Guar. Ins. Underwriters,* 582 F.2d 984, 990–91 (5th Cir.1978).

In addition, the Vogels have asserted another theory under which punitive damages are recoverable. Their complaint alleges that American induced them to contract through fraud and misrepresentation. Under Mississippi law, punitive damages are recoverable for tortious conduct involving grossly unjustifiable fraud. *Bryan*

*Constr. Co. v. Thad Ryan Cadillac, Inc.,* 300 So.2d 444, 449 (Miss.1974); *Sovereign Camp., W.O.W. v. Boykin,* 182 Miss. 605, 181 So. 741, 741–42 (1938). We have acknowledged, in other circumstances, that "[p]erhaps Mississippi courts would allow recovery of punitive damages . . . upon proof of egregious conduct in soliciting . . . contracts . . . ." *Paxton v. Weaver,* 553 F.2d 936, 940 n. 3 (5th Cir.1977). If the Vogels can prove by clear and convincing evidence that American induced them to contract by fraud, then the trial judge must submit to the jury whether they are entitled to punitive damages for American's conduct.

For these reasons, the judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**7.** If the Protection Plan is not a contract of insurance, ordinary contract law would apply because the Mississippi law of warranties covers only sellers' warranties of the condition of goods, Miss.Code Ann. §§ 75–2–312 to 75–2–

318 (1975), but does not extend to contracts of warranty executed between buyers and third parties who are willing to guarantee the condition of goods or real property for a specified period following the sale.