GLEN T. DOBOSZ *et al.*, Plaintiffs-Appellants, *v.* STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.

Second District   No. 83—125

Opinion filed December 29, 1983.

676

Glen T. Dobosz, of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellants, *pro se*.

John P. Callahan, of Casey, Krippner & Callahan, of Geneva, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Glen T. Dobosz and Suzanne L. Dobosz (Dobosz) purchased a home and obtained a Homeowners Insurance " 'All-Risk' Special Policy" from the State Farm Fire & Casualty Company (State Farm), purportedly in reliance on a brochure. Subsequently, water leaked through the basement walls of the home causing damage in the amount of $1,409.66. State Farm refused to pay, relying on an exclusion in the policy. Following a bench trial in a small claims action judgment was entered for State Farm. Dobosz appeals.

The coverage was purchased in July of 1980 and renewed for another year in July 1981. In April 1982 water leaked through the walls of plaintiffs' basement and sump pump pit, causing the sump pump to stop and allowing water to accumulate in the basement. The ensuing damage was repaired at the cost of $1,409.66. When Dobosz presented a claim under the homeowners insurance policy State Farm denied coverage, asserting that the policy excluded that type of water damage. The trial court entered judgment for State Farm, finding

that, despite the representations in the brochure, the policy excluded the type of damages claimed.

When Dobosz contacted State Farm agent Paul Buchholz to inquire about obtaining homeowners' insurance, Buchholz sent Dobosz a copy of State Farm's brochure, indicating that it described the various types of coverage available. Buchholz recommended the "All-Risk" policy, said it was the "Cadillac of the line," told Dobosz that it would take a long time to explain the policy itself, and indicated that the brochure would show what the policy covered. Dobosz received the brochure, examined it, and instructed Buchholz to issue the insurance. Dobosz testified that he relied on the brochure to indicate the risks against which the home would be insured.

The brochure contains a series of captioned pictures, depicting three types of coverage: the "Basic policy," the "Broad policy," and the " 'All-Risk' Special policy." Under the heading for the insurance form Dobosz chose, reading, "The 'All-Risk' Special policy adds these coverages for your home plus many others not specifically excluded," 10 pictures appear. One, captioned "Water damage," depicts an open window through which rain is falling and below which a puddle has formed. No water-related risks are pictured under the Basic policy with the possible exception of a depiction labeled "Windstorm, Hail." However, the section describing the Broad policy indicates that it covers damage resulting from "Freezing of plumbing systems," "Tearing or bulging of water heating appliances," "Weight of ice and snow," and "Water escape from plumbing, heating, air conditioning or appliances."

The brochure in small black print at the bottom states:

This brochure contains only a general description of coverages and is not a statement of contract. All coverages are subject to the exclusions and conditions in the policy itself.

Dobosz did not read the policy itself until after the damage occurred and testified that he had not received the policy previously. Buchholz testified that he sent the policy to Dobosz, along with a transmittal sheet, which indicated that the policy was enclosed. Dobosz admitted that he received the transmittal sheet, but denied that he received the policy; however, he never called Buchholz to request a copy of the policy, claiming that he did not think insurance companies typically sent the policies to insureds. The trial court did not determine whether the policy was actually sent to Dobosz.

The standard policy which was placed in evidence, as relevant here, excludes loss from

"Water Damage, meaning:

    a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    b. water which backs up through sewers or drains, or

    c. natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure. ***"

The issue is whether an advertising brochure, containing a pictorial representation captioned "Water damage," distributed by an insurance company through its agent, constitutes part of the insurance contract and controls over inconsistent language in the policy itself.

■■ In construing an insurance contract, the court's primary purpose is to give effect to the intent of the parties, which must be determined from the language of the policy, where that language is unambiguous. (*Seeburg Corp. v. United Founders Life Insurance Co.* (1980), 82 Ill. App. 3d 1034, 1039.) In this case, the policy itself excludes water damage, defined as, *inter alia*, flooding or seepage of water through a building or foundation. However, in interpreting an insurance policy, the court must consider the contract as a whole. *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1064.

■■ Various cases have held that a descriptive brochure furnished to an individual insured becomes a part of the insurance contract. (*Laib v. Fraternal Reserve Life Association* (1913), 177 Ill. App. 72, 75; *Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82, ___, 388 N.Y.S.2d 69, 70; *Morris v. Travelers Insurance Co.* (Mo. App. 1976), 546 S.W.2d 477, 486; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 442-43, 257 A.2d 671, 675; see *Winston v. Trustees of the Hotel & Restaurant Employees International Union Welfare Fund* (1982), 110 Ill. App. 3d 163, 166-67.) Frequently, these cases arise in the context of a group insurance policy, where the individual group member receives only a certificate of insurance or a summary booklet and never sees the master policy. (See *Winston v. Trustees of the Hotel & Restaurant Employees International Union Welfare Fund* (1982), 110 Ill. App. 3d 163; *Morris v. Travelers Insurance Co.* (Mo. App. 1976), 546 S.W.2d 477; see also *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522.) However, an advertising brochure has been treated as part of the insurance contract where an individual insurance policy is at issue. (*Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82,

388 N.Y.S.2d 69; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 257 A.2d 671; see *Laib v. Fraternal Reserve Life Association* (1913), 177 Ill. App. 72.) The key considerations in making this determination are whether the insured relies on the brochure in procuring the insurance and whether the brochure differs from the policy itself. *Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82, ____, 388 N.Y.S. 69, 70; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 442-43, 257 A.2d 671, 675; 13A Appleman, Insurance Law & Practice sec. 7534 (1976).

While there is language in some Illinois cases which suggests that representations in brochures or other material describing the coverage cannot vary the terms of the policy (see *Kleinman v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1004, 1007; *Gross v. University of Chicago* (1973), 14 Ill. App. 3d 326, 336-38), these cases are distinguishable in that either the material did not substantially differ from the actual policy (*Kleinman v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1004, 1007) or the variant material was not prepared by the insured. (*Gross v. University of Chicago* (1973), 14 Ill. App. 3d 326, 335.) Additionally, more recent Illinois case law suggests that descriptive booklets may be treated as part of the insurance contract. *Winston v. Trustees of the Hotel & Restaurant Employees International Union Welfare Fund* (1982), 110 Ill. App. 3d 163, 164; see *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 715-17.

■ Given Dobosz' reliance on the brochure in selecting this insurance policy and the contradiction between the representations in the brochure and the actual policy terms, State Farm's brochure should be treated as part of the insurance contract between these parties. See *Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82, 388 N.Y.S.2d 69; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 257 A.2d 671.

■ ■ When the brochure is so viewed, an ambiguity is presented in the contract terms. While a court is not to create an ambiguity in an insurance policy when none actually exists (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255), the clear implication of State Farm's advertising brochure differs from the exclusionary provisions of the policy issued to plaintiffs. This ambiguity exists despite the brochure's statement that it is subject to the conditions expressed in the policy. (See *Sparks v. Republic National Life Insurance Co.* (1982), 132 Ariz. 529, 647 P.2d 1127, *cert. denied* (1982), 459 U.S. 1070, 74 L. Ed. 2d 632, 103 S. Ct. 490; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 257 A.2d 671.) Any ambiguity in an insurance policy, especially in provisions by

which the insurer seeks to limit its liability, is construed against the insurer and in favor of the insured. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 2d 250, 255.) The insurer must demonstrate that the claim falls within the clear scope of the exclusion, since the insured intended to obtain coverage and the insurer, who drafted the policy, could have defined the terms of the exclusion more specifically and more precisely in its brochure. (103 Ill. App. 3d 250, 256.) In our view, and in recognition of the complications of insurance policy provisions, it is not too much to ask of the insurer who markets its policies by the use of attractive and illustrative brochures to give fairly equal prominence to exclusions and coverages. Given these principles, we construe this policy with the brochure as providing coverage for the claimed damage.

Alternatively we find coverage here under principles of estoppel. An insurer may be estopped to rely on an exclusionary clause in the insurance policy where descriptive brochures or solicitation materials distributed by the insurer misrepresent coverage. (*Vogel v. American Warranty Home Service Corp.* (5th Cir. 1983), 695 F.2d 877, 881; *Lewis v. Continental Life & Accident Co.* (1969), 93 Idaho 348, 354, 461 P.2d 243, 249.) The estoppel concept as applied to insurance contracts is premised on the rationale that, where the insurer's representations, through its agents or advertising materials, are intended to and do induce a person to secure a certain policy, the insurance company should be bound by its representations and the reasonable expectations of coverage created thereby. *INA Life Insurance Co. v. Brundin* (Alas. 1975), 533 P.2d 236, 242; *Craver v. Union Fidelity Life Insurance Co.* (1973), 37 Ohio App. 2d 100, 106, 307 N.E.2d 265, 269.

The language used by the insurer should be considered in light of the natural response that language would evoke in any prospective policyholder. (*Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82, ____, 388 N.Y.S.2d 69, 70; see *Carver v. Union Fidelity Insurance Co.* (1973), 37 Ohio App. 2d 100, 105, 307 N.E.2d 265, 269.) Thus, the fact that Glen Dobosz is an attorney is irrelevant, especially as there is no showing that he has any expertise in insurance matters or occupies any position, relative to State Farm, superior to that of the ordinary lay person, who is entitled to protection according to his or her reasonable understanding. *Puritan Life Insurance Co. v. Guess* (Alas. 1979), 598 P.2d 900; see *Weinberg v. Insurance Company of North America* (1976), 88 Misc. 2d 82, ____, 388 N.Y.S.2d 69, 70.

Both the terms of State Farm's brochure and the representa-

tions of its agent, Buchholz, lead to a reasonable expectation of comprehensive coverage of a wide variety of risks. The policy plaintiffs chose was called the " 'All-Risk' Special policy" which was described as providing certain specified coverages in addition to the protection afforded under the Basic and Broad policies, "plus many others not specifically excluded." In the context of the rest of the brochure, the general reference to "Water damage" in the section describing the "All-Risk" policy suggests coverage for all types of water damage. While water damage was not specifically discussed, Buchholz told Dobosz that this policy would cover everything and insure against all risks and that the brochure showed exactly what the policy covered. (Compare *INA Life Insurance Co. v. Brundin* (Alas. 1975), 533 P.2d 236; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 257 A.2d 671.) As the brochure and Buchholz' comments clearly implied coverage, State Farm is estopped to deny that the policy covers the damage here.

State Farm seeks to avoid plaintiffs' estoppel theory by pointing to language in the brochure that refers to the policy and to plaintiffs' failure to read the policy itself. While in small print at the bottom of one of its pages, the brochure contains the general reference to the policy exclusions, the description of the "All-Risk" policy also contains the statement that the policy "adds these coverages for your home plus many others not specifically excluded."

In some cases, language in a descriptive brochure has been held to notify the insured of the policy's limitations; however, in these cases, the brochure or other solicitation material typically has made clear reference to the limitation on which the insurer seeks to rely. (*Kleinman v. Commercial Insurance Co.* (1974), 19 Ill. App. 3d 1004, 1007; *Standard of America Life Insurance Co. v. Humphreys* (1975), 257 Ark. 618, 621, 519 S.W.2d 64, 67; *Morris v. Travelers Insurance Co.* (Mo. App. 1976), 546 S.W.2d 477, 487; see also *Sahlin v. American Casualty Co.* (1968), 103 Ariz. 57, 60, 436 P.2d 606, 609.) General statements concerning the policy usually are viewed as inadequate. *Sparks v. Republic National Life Insurance Co.* (1982), 132 Ariz. 529, 535, 647 P.2d 1127, 1133, *cert. denied* (1982), 459 U.S. 1070, 74 L. Ed. 2d 632, 103 S. Ct. 490; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 442-43, 257 A.2d 671, 675.

*Gross v. University of Chicago* (1973), 14 Ill. App. 3d 326, suggests that a descriptive brochure's general references to the policy may be sufficient to notify the insured that the policy is controlling. However, in *Gross*, the plaintiff raised no estoppel argument (14 Ill. App. 3d 326, 336), and the brochure was not prepared by the insurer.

Further, to the extent that *Gross* could be viewed as indicating that inconsistent policy provisions control despite representations in a brochure prepared by an insurer and relied upon by the insured, we disagree.

There is no warning in State Farm's brochure that the policy terms are materially variant from the representations in the brochure. Where the dominant theme of the insurer's advertising materials is comprehensive coverage, the insertion of a relatively inconspicuous caveat that coverage is subject to the policy terms should not be found sufficient to overcome the overall impression created by the brochure. *Craver v. Union Fidelity Life Insurance Co.* (1973), 37 Ohio App. 2d 100, 307 N.E.2d 265, 269; *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 442-43, 257 A.2d 671, 675.

An insured typically is charged with notice of the contents of the insurance policy, especially if it were available to him or her, regardless of a failure to read the policy. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 307.) Assuming that a copy of the policy was not sent to Dobosz, the transmittal sheet was sufficient to put Dobosz on notice that he should have received a copy of the policy, despite his subjective beliefs to the contrary. (See generally *Sahlin v. American Casualty Co.* (1968), 103 Ariz. 57, 436 P.2d 606.) However, Dobosz' negligence in failing to obtain or read the policy itself does not preclude a finding that State Farm is estopped to deny coverage here, given the contrary representations made in the brochure and the ambiguities created thereby. *Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa. Super. 434, 257 A.2d 671; see *Sparks v. Republic National Life Insurance Co.* (1982), 132 Ariz. 529, 647 P.2d 1127, *cert. denied* (1982), 459 U.S. 1070, 74 L. Ed. 2d 632, 103 S. Ct. 490.

The judgment of the circuit court of Kane County is reversed and judgment is here entered in favor of the plaintiffs in the amount of $1,409.66.

Reversed and judgment entered.

NASH and HOPF, JJ., concur.