**Catherine PALSCE and David Palsce, Appellants–Plaintiffs,**

v.

**GUARANTEE TRUST LIFE INSURANCE COMPANY, Appellee–Defendant.**

**No. 71A03–9110–CV–00305.**

Court of Appeals of Indiana, Third District.

March 16, 1992.

Rehearing Denied May 4, 1992.

James R. Byron and Margaret A. Robinson, Thorne, Grodnik & Ransel, Elkhart, for appellants-plaintiffs.

James H. Pankow, South Bend, for appellee-defendant.

HOFFMAN, Judge.

Appellants-plaintiffs Catherine and David Palsce appeal the trial court's grant of summary judgment to appellee-defendant Guarantee Trust Life Insurance Company.

One issue is dispositive of this case: whether the trial court erred in granting summary judgment in favor of Guarantee Trust Life Insurance Company.

The material facts in this case are undisputed. Catherine Palsce had health insurance at her place of work until she lost her job in 1986. In the fall semester of 1989, David Palsce, Catherine's son, brought home a brochure from his school offering a student accident insurance policy offered to the school by Guarantee Trust Life Insurance Company (Guarantee). The brochure explained that there were two types of coverage available, the 24–hour coverage or the at-school coverage. On the cover, the brochure stated in bold print "Policy Maximum of $25,000 for Each Accident!" The brochure further explained that this was protection "When You need it" and that the 24–hour coverage was the best buy since it covers "away from school and summer vacation accidents." An "Important Notice to Parents" was provided explaining that the "policy maximum per accident, for loss resulting directly and independently of all other causes from accidental bodily injury, covered under the Plan" was "$25,000.00." The brochure then detailed the costs that would be covered for medical expenses and contained many exclusions and limitations. At the bottom of the brochure, it was stated that the brochure was not the contract and that the insurance contract (the master policy) was on file at the school. The application for

the insurance was attached to this brochure. Catherine read the brochure, filled out the application, and sent her premium in for the 24–hour coverage. She never attempted to read the master policy.

During the summer of 1990, David was involved in an accident causing permanent blindness in his right eye. The costs incurred as a result of this injury are somewhere between $10,000.00 and $12,000.00. Catherine mailed the claims to Guarantee but was informed that the policy covered only $1,000.00 for a loss to an eye. Guarantee paid approximately $900.00.

Although the brochure had broadly advertised $25,000.00 maximum coverage for an accidental loss, the policy severely limited the amount recoverable for specific types of losses. For instance, loss of life is $1,000.00, loss of hand or foot is $2,500.00, loss of both hands, feet, or sight in both eyes is $5,000.00, one hand and one foot is $5,000.00, and either hand or foot and the sight of one eye is $5,000.00. Most importantly, loss of sight in one eye is $1,000.00. None of these "specific" losses were included in the brochure, although the brochure explicitly contained other policy information on medical expenses, excluded losses, and limitations on certain losses.

Indiana has yet to decide a case on this issue. Upon reviewing the decisions of other state courts dealing with similar fact situations, a prominent trend is present. This trend was noted in 13A J. Appleman, *Insurance Law & Practice* § 7534, at p. 130 (1976): "[m]oreover, fortunately the courts, beginning to realize the realities of the relationship between the parties, particularly that the contract as set forth the insurance policy often is practicably unintelligible and generally never read, whereas brochures and other material given out by the insurer are read and relied upon, are now enforcing the contract expected by the insured, that is the contract set out in the brochure or pamphlet."

In *Lawrence v. Providential Life Insurance Co.* (1965), 238 Ark. 981, 385 S.W.2d 936, Mr. Lawrence had purchased Providential's school accident insurance policy for his son. The insurance in *Lawrence*

was solicited the same way as in this case. The student brought home a pamphlet advertising the policy. The pamphlet explained the benefits of the policy, exclusions of the policy, and premium amount. The application was a part of the pamphlet which was detached and mailed to Providential with the premium. There was a statement in the pamphlet explaining that the pamphlet was not an insurance policy and that the master policy was on file at the school.

Mr. Lawrence's son, David, was involved in a fight at some later date from which he sustained a cut to his lip. Due to the fact that David was afflicted with hemophilia, the bleeding would not stop and David incurred extensive medical bills. Providential denied coverage asserting that the policy, not the brochure, contained exclusions for fighting and any aggravation of a pre-existing condition. The court noted that the printed matter in the application appeared to be complete in giving full information about what is not covered by the policy and that this information was what the applicant understood was not covered by the policy. Therefore, the *Lawrence* Court held that Providential was limited to asserting the exclusions listed in the brochure and had no right to add other exclusions.

In a subsequent case, *Providential Life Insurance Co. v. Clem* (1966), 240 Ark. 922, 403 S.W.2d 68, the Clems purchased the "Providential School Plan" for their son, David. The pamphlet, which David brought home from school, stated that the policy covered anyone who is killed while traveling "to and from home and school sponsored activities provided such travel is adult supervised." David was killed in an automobile accident while traveling with his teammates to a track meet. Providential denied coverage based on the fact that the policy had a more broad exclusion which provided that at least one parent or adult school employee had to be in the vehicle. The vehicle in which David was riding did not have a parent or adult school employee, although the travel was adult supervised. Clearly a conflict existed be-

tween the pamphlet and the policy. Relying on its previous case, *Lawrence, supra,* the court held that the Clems had a right to rely on the wording contained in the pamphlet and ordered Providential to provide coverage.

Similarly, the court in *Crawford v. Mid-America Insurance Company* (1972), Mo. App., 488 S.W.2d 255, found that the coverage explained in the insurer's brochure which extended to injuries resulting from students participating in or attending school-sponsored and supervised activities was much broader than the coverage in the master policy which permitted recovery under such circumstance only if the activity was "directly supervised" and a school employee was "physically present" at the place where the "extracurricular" activity was being conducted. The insurer was not permitted to assert the more stringent provisions of the policy but was bound by its representations in the brochure.

In summary, "[w]here a conflict exists between a master policy and other informational resources prepared and distributed at the insurer's behest, courts have not hesitated to hold that insureds are not bound by more restrictive provisions in the policy."

> *Romano v. New England Mutual Life Insurance Co.* (1987), W.Va. [178 W.Va. 523], 362 S.E.2d 334, 340.
> *See also Barth v. State Farm Fire & Casualty Co.* (1969), 214 Pa.Super. 434, 257 A.2d 671;
> Annot., 6 A.L.R.4th 835 (1981) (effect of policy limitations or exclusions not in materials provided to insureds);
> Annot., 36 A.L.R.3d 541 (1971) (estoppel based upon promotional materials or explanatory materials provided to insureds).

It appears after comparing the brochure and the policy in this case that the insurer, Guarantee, went to great lengths to place most of the provisions of the policy into the brochure. This certainly makes it appear that the brochure represents the provisions of the policy. However, some extreme limitations on losses were not included in the brochure nor were any cautionary references made to these limitations. The brochure simply made the broad statement that losses due to accidents were covered for not more than $25,000.00, then detailed numerous expenses, exclusions, and limitations. Since there is a conflict between the provisions in the brochure and the provisions in the policy, the insurer, Guarantee, will be held to the broader coverage provisions in the brochure.

Guarantee does not dispute that Catherine read the brochure and relied on the representations in the brochure. Therefore, Guarantee will be bound by these representations.

Reversed and remanded for further proceedings consistent with this opinion.

GARRARD and RUCKER, JJ., concur.