# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1887

COMMONWEALTH INSURANCE COMPANY, HARTFORD
FIRE INSURANCE COMPANY, NAVIGATORS INSURANCE
COMPANY, EMPLOYERS INSURANCE OF WAUSAU, and
NEW YORK MARINE & GENERAL INSURANCE COMPANY,

*Plaintiffs*,

*v.*

STONE CONTAINER CORPORATION,

*Defendant-Counterclaim Plaintiff-Appellant*,

*v.*

INDUSTRIAL RISK INSURERS,

*Counterclaim Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8471—**Charles P. Kocoras**, *Chief Judge*.

_____

ARGUED OCTOBER 21, 2003—DECIDED DECEMBER 9, 2003

_____

Before BAUER, DIANE P. WOOD, and EVANS, *Circuit
Judges*.

EVANS, *Circuit Judge*.  This insurance dispute leads us into familiar territory—the question of who is responsible for over $80 million in losses the Stone Container Corporation incurred when one of its pulp and paper plants exploded. This is the third time claims stemming from that event have reached our court. *See Stone Container Corp. v. Hartford Steam Boiler*, 165 F.3d 1157 (7th Cir. 1999); *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507 (7th Cir. 2003) (*Stone 1* and *Stone 2*). In this case, Stone argues that the "all-risk" insurance policy it purchased from Industrial Risk Insurers (IRI) covers its losses. Based upon an exclusion in the policy for ruptures of pressure vessels, however, the district court granted IRI summary judgment. 2001 U.S. Dist. LEXIS 24064 (N.D. Ill. 2002). Stone appeals.

Like our previous forays into issues surrounding the plant explosion, this case, too, is but "a small part of a much larger dispute." *Stone 2*, 323 F.3d at 508.[1] Thus, before addressing the claims here, we briefly examine the history of Stone's insurance coverage and the litigation that preceded this case.

Stone manufactures paper products. It makes pulp in huge steel tanks called "pulp digesters." Wood chips and chemicals are placed in the tank, which is then sealed and subjected to heat and pressure from piped in steam. The chips then decompose into pulp fiber.

Between 1991 and 1993, Stone had property damage and business interruption insurance coverage in place for

---

[1] Not only is this the third time we examine Stone's explosion, but, we note, Stone's suit against all-risk insurers Commonwealth Insurance Company, Hartford Fire Insurance Company, Navigators Insurance Company, Employers Insurance of Wausau, and New York Marine & General Insurance Company remain before the district court.

losses in excess of $20 million. Arkwright Mutual Insurance Company issued the single all-risk insurance policy, which included boiler and machinery (B&M) coverage.

Because of its poor loss history, however, in 1994 Stone was unable to purchase a similar all-risk policy. Specifically, many insurers were not willing to write B&M coverage for the company. Thus, Stone had a patchwork of coverage. IRI and other "all-risk" insurers provided all-risk property insurance in the layer excess of $20 million, subject to a B&M exclusion. Hartford Steam Boiler (HSB) provided B&M coverage in that layer.

On April 13, 1994, a thin area of steel shell in one of Stone's tanks ruptured. Within milliseconds, the tank exploded and launched a 28-ton piece of the tank over 200 feet. Besides much property damage, several workers were killed. The company incurred over $80 million of losses.

Following the loss, all-risk insurers—Commonwealth Insurance Company, Hartford Fire Insurance Company, Navigators Insurance Company, Employers Insurance of Wausau, and New York Marine & General Insurance Company—filed a lawsuit seeking a declaratory judgment that their policies did not provide coverage. This suit was dismissed without prejudice so that Stone could pursue an action against HSB, whose policy covered "accidents to objects," including pressure vessels. There was, however, an exclusion for explosions, which HSB relied on to deny coverage. The district court granted Stone summary judgment, holding that the event did not constitute an explosion. *Stone Container Corp. v. Hartford Steam Boiler Inspection Co.*, 936 F. Supp. 487 (N.D. Ill. 1996).

We reversed, finding that "[o]ne of the tanks in one of Stone's plants *exploded* when a thin area of steel shell *ruptured* during the high-pressure operation of the tank." *Stone 1*, 165 F.3d at 1160 (emphasis added). We further noted that "it is the digester itself that, as a result of the

rupture in its wall, blew up." *Id.* at 1159-60. Thus, because Stone's loss constituted an explosion of equipment other than the specially identified types of equipment covered against explosion by HSB, HSB's policy did not cover the loss. *Id.* at 1160.

Our decision in *Stone 1* led the all-risk insurers to reinstate their declaratory judgment action. Stone answered and asserted third-party claims against Aon Risk Services, Inc., its insurance broker, for breach of contract, negligence, and breach of fiduciary duty for failing to obtain adequate insurance coverage for Stone, and against IRI. The district court granted summary judgment for Aon on the ground that Stone's claims were time-barred. We affirmed in *Stone 2*.

The district court in this case granted summary judgment to IRI after concluding that its policy excluded coverage for losses based on the "rupture" of pressure vessels. Since the evidence established that the explosion and resulting damage was caused by a rupture, as we held in *Stone 1*, there was no coverage under the IRI policy.

Because this is a diversity case, we apply Illinois law. That law, with regard to interpreting insurance policies, provides:

> The primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, but if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. Courts will not strain to find ambiguity in an insurance policy where none exists.

*McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999) (internal citations omitted). Thus, our first task is to

determine whether the language of the policy is ambiguous. Exclusion H of IRI's C-AR (comprehensive all-risk) policy reads:

> H. BOILER AND MACHINERY EXCLUSIONS— Unless endorsed hereon, this policy does not insure against:
>
> 1. explosion in or of the following property owned, operated or controlled by the Insured: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes interconnecting any of the foregoing; or gas turbines; except that liability is specifically assumed for loss resulting from Explosion of accumulated gases or unconsumed fuel within the firebox (or the combustion chamber) of any fired vessel, other than gas turbines, or with the flues or passages which conduct the gases of combustion therefrom;
>
> 2. rupture, bursting, cracking, burning or bulging of . . . pressure vessels, including equipment attached to and forming a part thereof . . . .
>
> * * *
>
> nor does this policy insure against resulting damage to property caused by such Occurrences except damage from a . . . combustion Explosion . . . .

We think the policy exclusion is unambiguous. "A policy provision is ambiguous only if it is subject to more than one reasonable interpretation." *Lapham-Hickory Steel Corp. v. Protection Mut.*, 166 Ill. 2d 520, 529 (1995). Exclusion H2 clearly establishes that IRI does not insure against the "rupture . . . of . . . pressure vessels."

This exclusion, moreover, is clearly applicable since Stone's losses were caused by a rupture. In *Stone 1*, we noted that "[o]ne of the tanks in one of Stone's plants ex-

ploded when a thin area of its steel shell *ruptured* during the high-pressure operation of the tank." 165 F.3d at 1159 (emphasis added). That conclusion, moreover, is amply supported by the record. After the explosion, Stone retained Packer Engineering to perform an independent investigation of the cause of the digester failure. Packer's report concluded that the cause was a "rupture." Furthermore, Stone's agents consistently referred to the loss as being caused by a rupture. In describing the event to its employees, Stone, in a press release approved by Jim Heider, who was in charge of Stone's Mill Division at the time of the explosion, stated that "one (1) of 22 batch digesters *ruptured* . . . ." In a letter from one of its attorneys, Stone referred to the event as a "catastrophic *rupture*." In its filing with the SEC, Stone reported that it paid fines to OSHA resulting from "the April 13, 1994, digester vessel *rupture* at the company's Panama City, Florida pulp and paperboard mill . . . ." And, in its prior litigation against HSB before this court, Stone argued that "[t]he No. 15 pulp digester at the Stone Container Paper Mill . . . *ruptured* catastrophically . . . ."

This does not, however, completely resolve the issue. The rupture itself led to an explosion. *Stone 1*, 165 F.3d at 1159. Based on this, Stone argues that H1, which excludes from coverage explosions of certain property, not H2, is the critical policy language we should look to. Under H1, explosions of pressure vessels, unlike other listed property, are not expressly excluded. Thus, by inference, they are covered. *See National Union Fire Ins. Co. v. Glenview Park Dist.*, 158 Ill. 2d 116, 123 (1994) (exclusions will not be applied unless they are "clear, definite and explicit").

If Stone is correct, under H2, coverage would be excluded for the damage the rupture caused, but under H1 the company could recover for the losses that resulted from the explosion. Since the two occurrences happened virtually

simultaneously, within milliseconds, determining causation and thus apportioning damages between the covered event and the non-covered event would be extremely challenging. At a minimum, we would be required to examine Illinois law with regard to dual or concurrent causation. *See Transamerica Ins. Co. v. South*, 975 F.2d 321, 330 (7th Cir. 1992) (discussing Illinois law regarding dual causation).

Such an analysis is not necessary. The language of Stone's policy itself is clear. The last part of exclusion H2 states that the policy does not insure against "resulting damage . . . caused by such Occurrences [rupture, bursting, cracking, burning or bulging] except damage from a . . . combustion Explosion . . . ." By its terms, then, the policy excludes explosions ("damage") that results from ruptures, unless the resulting explosion is a "combustion Explosion" (which neither party claims this was).[2] Because the language in exclusion H is unambiguous in barring coverage, there is no need to examine any extrinsic evidence. *See Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554, 559 (7th Cir. 1991) (holding that the trial court erred when it allowed extrinsic evidence to interpret unambiguous policy language); *Mank v. West American Ins. Co.*, 249 Ill. 3d 827, 830 (Ill. App. Ct. 5th Dist. 1993) ("No extrinsic evidence of the party's intent needs to be considered where the contract is determined to be unambiguous.").

The district judge also properly granted IRI summary judgment on Stone's claim that IRI violated the Illinois

---

[2]  Stone argues that the term "damages" [sic] in this clause refers only to "money lost," not resulting physical harm. This interpretation is flawed. Stone ignores the exception to the exclusion for damage resulting from a "combustion Explosion." By including this language, it is clear that under exclusion H an explosion, other than a combustion explosion, is considered a "resulting damage."

Consumer Fraud and Deceptive Business Practices Act, 18 ILCS 505/2, 505/10a. Stone claims that IRI misrepresented the scope of its insurance coverage in one of its publications and failed to disclose the gap that existed between IRI's and HSB's insurance policies.

To begin, Stone cannot establish that IRI acted deceptively. *See Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002) (stating the elements necessary to sustain a cause of action under the Illinois Consumer Fraud statute). The publication Stone relies on states that the "major hazard" with digesters is "explosion from vessel failure." It does not, however, make any representations concerning insurance coverage for such explosions.

Nor is there evidence that IRI issued the publication intending for Stone to rely on it to determine the scope of coverage. *See id. Dobosz v. State Farm Fire & Cas. Co.*, 120 Ill. App. 3d 674 (Ill. App. Ct. 2d Dist. 1983), cited by Stone, is not applicable. There, the court treated a brochure as part of the insurance contract between the parties when State Farm's agent sent Dobosz a copy of the company's brochure and indicated that it described the available coverage. *Id.* at 677. The agent further told Dobosz it would take a long time to explain the policy itself and stated that the brochure showed what the policy covered. *Id.* Dobosz testified, moreover, that he relied on the brochure to indicate the risks against which his home would be insured. *Id.* In contrast, here, Stone is a large corporate entity which hired a professional corporate insurance broker. There is no evidence that IRI told Stone to depend on the publication, and Stone fails to establish that it relied on the brochure in lieu of, for example, reading the language of the insurance policy.

Finally, IRI did not have a duty to disclose the existence of a gap in coverage to Stone. *See, e.g.*, *Nielson v. United Servs. Auto. Ass'n*, 244 Ill. App. 3d 658, 663 (Ill. App. Ct. 2d

1993). Insured parties have the burden of knowing the contents of their insurance policies. An insurer "does not have the duty of reviewing the adequacy of an insured's coverage, even when it knows of facts that indicate that the coverage is inadequate." *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 274 (7th Cir. 1986); *Nielson*, 244 Ill. App. 3d at 663. Thus, such a nondisclosure does not provide a basis for liability under the Consumer Fraud Act.

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*